## BASHAM v. VIRGINIA BREWING CO., Inc.

### No. 291.

District Court, W. D. Virginia,
Roanoke Division.

July 17, 1946.

R. Roy Rush, Asst. U. S. Atty., of Roanoke, Va., for plaintiff.

Holman Willis, and Holman Willis, Jr., of Willis & Willis, all of Roanoke, Va., for defendant.

BARKSDALE, District Judge.

This action having been tried by the court, without a jury, the court finds the

facts specially and states separately its conclusions of law, as follows:

### Findings of Fact.

The plaintiff, prior to March 16, 1943, was, and had been for several years, employed by the defendant in a position other than temporary, and on or about March 16, 1943, plaintiff left his position with the defendant and was inducted into the United States Navy pursuant to the provisions of the Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix, § 301 et seq. After plaintiff had satisfactorily completed his service in the United States Navy, and was granted a certificate of discharge on October 27, 1945, within forty days thereafter, on or about November 7, 1945, plaintiff applied to the defendant for re-employment, and was then and there re-employed by the defendant in a position substantially the same as that held by plaintiff prior to his induction. Plaintiff continued in the employment of the defendant until December 26, 1945, when he was indefinitely laid off by the defendant, and in effect, discharged as of that date. During his employment, the duties of the plaintiff were to drive a truck of the defendant, to sell beer, and to deliver the same in a specified territory, and when not so occupied, to help in the manufacture of the beer, to deliver beer for other employees who might be sick or absent for other causes, and to do such other odd jobs as might be required of him by the defendant. For such work, plaintiff was paid twenty-one dollars per week as salary, and two and one-half cents per case as commission for beer sold. During the period of his employment, the plaintiff earned an average of sixty-seven dollars and thirty-nine cents per week, and three or four days per week he hired a helper at two dollars and fifty cents per day, and paid him from his own earnings. After the plaintiff's discharge, the defendant's materials for the manufacture of beer were curtailed, resulting in a curtailment of its output of beer. Of course, this resulted in a diminution of the earnings of defendant's salesmen, and during the period, January 1, 1946–March 30, 1946, defendant's five salesmen, under employment arrangements similar to that had with the plaintiff, earned an average of sixty-three dollars and seventy-four cents per week. During the period, April 1, 1946, to June 30, 1946, defendant discharged the salesman who had been employed to take the plaintiff's place, and the remaining four salesmen earned an average of seventy-one dollars and ten cents per week.

During his employment, the plaintiff sold and delivered beer in his own territory without complaint, but from the very first, he performed his other duties grudgingly, and frequently only under the threat of discharge. It was the defendant's custom, when customers from outside of the Roanoke area came to the plant for beer, to load their purchases before loading its own trucks such as the one driven by the plaintiff. The plaintiff complained bitterly and profanely about this in the hearing of the customers. He also used loud, profane and vulgar language on other occasions against the defendant's rules, and after being warned not to do so. This was peculiarly important to the defendant, since it operated under the regulations and supervision of the Virginia Alcoholic Board of Control, and might lose its license for disorderly conduct on its premises. The plaintiff was twice warned by the President of defendant about the manner in which he was doing his work and his uncooperative attitude. Finally, on December 26th, when ordered to deliver certain beer sold by another salesman who was sick, the plaintiff refused to do so. When this was reported to the President of defendant, he directed that the plaintiff be discharged, and he was then and there indefinitely laid off or discharged. The plaintiff reported to his Selective Service Board that he had been discharged without cause, and representatives thereof undertook to adjust this dispute and the defendant declined to cooperate.

### Conclusions of Law.

From the evidence, I conclude as a matter of law that the conduct of the plaintiff during his employment constituted cause for his discharge within the meaning of Title 50 U.S.C.A.Appendix, § 308(c).

It therefore follows that, inasmuch as the discharge of the plaintiff by the defendant was for cause, and not arbitrary, I conclude

that the plaintiff is not entitled to any of the relief prayed for in his complaint, and an order will be entered dismissing this action.